# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **JACK GEISLER,** ) | |
| ) | |
| **Plaintiff,** ) | **CIVIL ACTION** |
| ) | |
| **v.** ) | **No. 10-1412-JWL** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security
(hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental
security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social
Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).
Finding error in the ALJ's evaluation of the treating source opinion, the court ORDERS
that the decision is REVERSED, and that judgment shall be entered pursuant to the fourth
sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings.

## I.    Background

Plaintiff applied for both DIB and SSI in May or June, 2005, alleging disability
beginning July 1, 2004. (R. 30, 37, 149-57). The SSI documentation does not appear in

the record before the court, but Plaintiff does not argue error in this regard, both parties agree that Plaintiff made concurrent applications, and the decision under judicial review clearly finds that Plaintiff was not disabled before his date last insured for DIB, but became disabled for purposes of SSI beginning September 1, 2009.  (R. 30); (Pl. Br. 2); (Comm'r Br. 1-2).  The court accepts that Plaintiff filed concurrent applications.

Plaintiff's applications were denied initially and upon reconsideration, and Plaintiff testified at a video hearing before an Administrative Law Judge (ALJ).  (R. 37, 32-33, 474-504).  That ALJ issued a decision denying benefits on September 4, 2008, discovered that the "Rationale" portion of the decision was incomplete, and issued an "Amended Decision" on September 24, 2008.  (R. 34-45, 50-61).  Plaintiff sought Appeals Council review of the ALJ's decision; and the Appeals Council found error, vacated the decision, and remanded the case for further proceedings.  (R. 46-49, 96-100).

On remand, additional evidence was received, and a different ALJ, Michael A. Lehr, held a hearing in the matter.  (R. 283-88, 442-70, 505-69).  At the hearing, Plaintiff was represented by an attorney, and testimony was taken from a medical expert, from Plaintiff, and from a vocational expert.  (R. 18, 505-69).  ALJ Lehr issued a partially favorable decision on March 5, 2010 finding that Plaintiff was not disabled within the meaning of the Act at any time before his date last insured, June 30, 2008, but that he became disabled within the meaning of the Act on September 1, 2009.  (R. 18-31).  Consequently, he denied Plaintiff's DIB application, and referred the matter to the "component of the Social Security Administration responsible for authorizing

2

supplemental security income" to determine if Plaintiff met the nondisability

requirements for such payments, and, if so, "the amount and the months for which

payment will be made."  (R. 30-31).

Plaintiff disagreed with the ALJ's decision, sought Appeals Council review, and

submitted a brief for the Council's consideration.  (R. 13, 471-73).  The Appeals Council

made Plaintiff's brief a part of the record and considered the arguments therein, but found

no reason to review the ALJ's decision, and denied Plaintiff's request.  (R. 9-12).

Consequently, the ALJ's decision is the final decision of the Commissioner.  (R. 9);  Blea

v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review of

that decision.  (Doc. 1).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act.  Weinberger v. Salfi,

422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048,

1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d

1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C.

§ 405(g)).  Section 405(g) of the Act provides for review of a final decision of the

Commissioner made after a hearing in which the Plaintiff was a party.  It also provides

that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by

substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine

whether the factual findings are supported by substantial evidence in the record and

whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084

3

(10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).

Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such

evidence as a reasonable mind might accept to support a conclusion. Wall, 561 F.3d at

1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither

reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v.

Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health &

Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395

F.3d 1168, 1172 (10th Cir. 2005). Whether substantial evidence supports the

Commissioner's decision is not simply a quantitative exercise, for evidence is not

substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.

Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

        An individual is under a disability only if that individual can establish that he has a

physical or mental impairment which prevents him from engaging in any substantial

gainful activity and which is expected to result in death or to last for a continuous period

of at least twelve months. Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993)

(citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir.

1985) (quoting identical definitions of a disabled individual from both 42 U.S.C.

§§ 423(d)(1) and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A)). The claimant's impairments must be of such severity

that he is not only unable to perform his past relevant work, but cannot, considering his

4

age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability.  20 C.F.R. §§ 404.1520, 416.920 (2009); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment, and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  If claimant's impairment(s) does not meet or equal a listed impairment, the Commissioner assesses claimant's residual functional capacity (hereinafter RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five-- whether claimant can perform his past relevant work, and whether, when considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Blea, 466 F.3d at 907; accord, Dikeman v. Halter,

245 F.3d 1182, 1184 (10th Cir. 2001); <u>Williams</u>, 844 F.2d at 751 n.2.  At step five, the

burden shifts to the Commissioner to show jobs existing in the economy which are within

Plaintiff's capability.  <u>Id.</u>; <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1088 (10th Cir. 1999).

      Plaintiff makes three claims of error in the decision at issue here.  He claims

(1) the ALJ's RFC assessment is not supported by substantial evidence, (2) the ALJ erred

in determining the onset date of Plaintiff's disability, and (3) the ALJ erred in evaluating

the treating source medical opinion of Dr. Stone.  The Commissioner argues that the ALJ

properly considered Dr. Stone's medical opinion, that the ALJ's RFC assessment applied

the correct legal standard and is supported by substantial record evidence, and that the

ALJ properly determined the onset date of Plaintiff's disability based upon substantial

evidence in the record.  Because determining the onset date of disability requires a prior

determination that Plaintiff does not have the RFC to perform work in the economy; Soc.

Sec. Ruling (SSR) 83-20; and because RFC assessment necessarily rests upon a proper

evaluation of the medical opinions; 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); SSR 96-

8p; the court begins by considering the ALJ's evaluation of Dr. Stone's opinion.

## III.    Evaluation of Dr. Stone's Treating Source Opinion

      Plaintiff's brief summarized the appropriate legal standard for evaluating a treating

source opinion:  an ALJ is to first determine whether the opinion is worthy of controlling

weight, and if not, to evaluate the opinion in accordance with certain factors provided in

the regulations.  (Pl. Br. 16) (citing <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300 (10th Cir.

2003); and 20 C.F.R. §§ 404.1527, 416.927).  Plaintiff acknowledges that the ALJ

properly determined Dr. Stone's opinion is not worthy of controlling weight, and adequately addressed the regulatory factors in evaluating the opinion.  Id.  However, he identifies two reasons given by the ALJ to discount Dr. Stone's opinion and argues, "Although [the ALJ] identified the correct factors for consideration, his findings are not supported by substantial weight."  Id.  Plaintiff argues that the ALJ improperly relied upon his own lay opinion and upon speculation to discount Dr. Stone's opinion that Plaintiff must alternate sitting and standing every ten to fifteen minutes, and that the ALJ erred in finding that Dr. Stone intended his limitations to remain in effect only until Plaintiff was seen by an orthopedic or neurologic specialist.  (Pl. Br. 17-19).

The Commissioner notes that the ALJ accorded Dr. Stone's opinion "some weight" except for the need to alternate position as often as every ten to fifteen minutes. (Comm'r Br. 7) (citing (R. 26)).  The Commissioner cites record evidence tending to support the ALJ's decision to discount Dr. Stone's opinion, and notes that the ALJ summarized and weighed the medical opinions of Dr. Dickerson, Dr. Legler, Dr. Temple and Dr. Francis.  (Comm'r Br. 8-9).  He argues that the opinions of Drs. Francis, Temple, and Legler support the ALJ's evaluation of Dr. Stone's alternation requirement, that the ALJ performed his duty as the trier of fact to weigh the evidence and resolve conflicts in the evidence, and that he properly discounted Dr. Stone's opinion.  Id. at 9-10.

## A.     The ALJ's Evaluation of Dr. Stone's Medical Opinion

The ALJ summarized Dr. Stone's letter opinion, dated April 1, 2008:

> Dr. Stone states that the claimant is limited to lifting or carrying up to 15
> pounds on an occasional basis, standing or walking no more than 2 hours
> out of an 8 hour workday, and no prolonged or captive positioning.
> (Exhibit 12F [(R. 430-31)])  Dr. Stone explains that the claimant would
> need to alternate between sitting, standing, and moving about as often as
> every 10 to 15 minutes.

(R. 26).

The ALJ acknowledged that Dr. Stone was Plaintiff's treating physician since 2004, and summarized the standard used in evaluating treating source medical opinions. Id.  He found that Dr. Stone's opinion is not entitled to controlling weight, and proceeded to evaluate the opinion pursuant to the regulatory factors.  Id.  The ALJ provided five reasons to discount Dr. Stone's opinion.  He found the opinion was not supported by (1) objective medical evidence, (2) examination findings, and (3) treatment notes; noted that before the progression of peripheral neuropathy as reflected in the nerve conduction study in September 2009, Plaintiff "would credibly require some opportunity to alternate position, but [(4)] the evidence does not support the extreme need for alternation described by Dr. Stone;" and (5) "Dr. Stone qualifies his opinion letter by stating that his limitations should only remain in effect until the claimant can be evaluated by an orthopedic or neurological specialist."  (R. 26).  He concluded, "Considering these factors, the opinions of Dr. Stone are given some weight with the exception of the described need for alternation."  Id.

**B.      Analysis**

As Plaintiff admits, the ALJ applied the correct legal standard to evaluate Dr. Stone's treating source opinion. What Plaintiff argues is that substantial evidence does not support the ALJ's findings. First, he argues that the ALJ merely relied upon lay opinion and upon speculation to discount the alleged need to alternate positions as often as every ten to fifteen minutes. Then, he also argues that Dr. Stone did not qualify his opinion letter in the manner suggested by the ALJ. The court begins with the ALJ's finding regarding Dr. Stone's qualification of his opinion.

As his fifth reason for discounting Dr. Stone's opinion, the ALJ stated, "it is worth noting that Dr. Stone qualifies his opinion letter by stating that his limitations should <u>only</u> remain in effect until the claimant can be evaluated by an orthopedic or neurological specialist." (R. 26) (citing Ex. 12F) (emphasis added). Plaintiff quotes the statement of Dr. Stone to which the ALJ's reason referred: "These restrictions should remain in effect until this patient can be evaluated by an orthopedic or a neurologic specialist." (Pl. Br. 18) (quoting (R. 430) without pinpoint citation to that reference). Plaintiff's brief argues that the only difference between the ALJ's summary and Dr. Stone's opinion is that the ALJ used the term "only," and asserts that "[t]he ALJ inexplicably added 'only' to his quotation." (Pl. Br. 18). Plaintiff then argues that "[t]here is no evidentiary basis for the ALJ's inference that the restrictions automatically expired at the moment Geisler saw a specialist," and that the ALJ did not explain how Dr. Stone's qualification of his opinion undermines the opinion. <u>Id.</u>

First, the ALJ did not purport to quote Dr. Stone's letter opinion. He merely summarized the opinion, and he stated his understanding that Dr. Stone intended his limitations only to remain in effect until Plaintiff "can be evaluated by an orthopedic or neurological specialist." (R. 26). Second, the court does not read the ALJ's use of the term "only" to suggest a temporal limit to Dr. Stone's opinion or to suggest that the opinion would "automatically expire" when Plaintiff saw such a specialist. Rather, in context, the sense of the ALJ's reasoning is that Dr. Stone was not completely certain that the limitations he suggested were correct, that he recognized that a neurologic or orthopedic specialist is better qualified to evaluate the limitations resulting from a spinal impairment such as Plaintiff's, and that although he felt it was necessary in the interim to impose functional limitations, he was willing to defer to the judgment of a specialist when such an opinion became available. Contrary to Plaintiff's argument, the decision reveals the ALJ's rationale for discounting Dr. Stone's opinion based upon Dr. Stone's qualification of his opinion. And, Dr. Stone's equivocation is a proper basis to discount his opinion. The court finds no error in this reason.

Plaintiff's first argument (that the ALJ merely relied upon lay opinion and upon speculation to discount the alleged need to alternate positions as often as every ten to fifteen minutes) misunderstands the ALJ's decision. The ALJ noted that Dr. Stone's opinion was not supported by objective medical evidence, examination findings, or treatment notes. He explained, "Particularly problematic is the extreme need for alternation. Although the claimant has some evidence of degeneration, the objective

10

findings do not reflect a severity level which would warrant such extreme alternation."
Id. (citing Exs. 1F, 2F, 4F, 11F (R. 290, 298-300, 316, 426)).  The evidence cited by the
ALJ supports his conclusion.  (R. 290) ("Severe degenerative disc disease with
degenerative joint disease"); (R. 298-300) ("mild central stenosis," "No pathological
motion upon flexion and extension with normal alignment."); (R. 316) ("Degenerative
changes with no signs to suggest acute pathology of the spine."); (R. 426) (same).  As the
ALJ noted, the evidence cited for the period before September 1, 2009 demonstrates that
Plaintiff had severe degeneration of the spine but only mild central stenosis, no
pathological motion, normal alignment, and no signs to suggest acute pathology of the
spine.  The ALJ's finding is not mere lay opinion or speculation, and is supported by the
objective medical evidence, as cited by the ALJ.

Citing Winfrey v. Chater, 92 F.3d 1017, 1022 (10th Cir. 1996), Plaintiff argues
that an ALJ may not use his own lay opinion to the exclusion of a physician's medical
opinion.  (Pl. Br. 17).  As Plaintiff's argument suggests, the Winfrey court found that the
ALJ in that case "erred in rejecting Dr. Spray's opinion without adequate justification and
in substituting his own medical judgment for that of mental health professionals."
Winfrey, 92 F.3d at 1023.

The Winfrey court's discussion reveals that Dr. Spray diagnosed plaintiff with a
somatoform disorder based upon an examination which included administering the
Minnesota Multiphasic Personality Inventory-2 (MMPI-2), and that Dr. Spray performed
another examination about one year later in which he also found plaintiff "extremely

somatically preoccupied." Id. at 1021.  Dr. Dean, another mental health professional,

performed a consultative evaluation of Winfrey for the Social Security Administration,

but did not diagnose plaintiff with a somatoform disorder.  Id.  When plaintiff's attorney

asked whether Dr. Dean noted the presence of a somatoform disorder,

> Dr. Dean wrote that he "was unable to adequately assess the presence or
> absence of objective findings which would either corroborate or eliminate
> the presence of a somatoform disorder," because he was not given complete
> data on plaintiff's medical care and he neither obtained a complete medical
> history from plaintiff nor conducted his own physical examination of
> plaintiff.

Id.  In the face of this evidence, the ALJ nonetheless found that plaintiff did not have

somatoform disorder and justified that finding, in part, because he concluded (1) that Dr.

Dean's failure to consider a diagnosis of somatoform disorder was "a reflection of his

belief at the time that such diagnosis was not warranted," and (2) that an MMPI-2 such as

that administered by Dr. Spray is not a proper basis to diagnose somatoform disorder.

Winfrey, 92 F.3d at 1022.

> The Winfrey court explained that:
>
> the ALJ's attempt to infer from Dr. Dean's failure to diagnose a
> somatoform disorder a determination by Dr. Dean that the diagnosis was
> not warranted is belied by Dr. Dean's own explanation for the absence of a
> diagnosis.  Finally, the ALJ clearly overstepped his bounds when he
> substituted his medical judgment for that of Dr. Spray, by determining that
> the results of the MMPI-2 test were not an adequate basis on which to make
> a diagnosis.

Winfrey, 92 F.3d at 1022.

The situation presented in <u>Winfrey</u> is not the situation here.  Here, the ALJ did not discount Dr. Stone's opinion because he misinterpreted the opinion, or because he held a contrary medical opinion.  Rather, he discounted the opinion on the basis that the record evidence did not support the opinion.  It is the ALJ's responsibility to weigh the medical opinions, including the treating source opinions, and in doing so, in the appropriate circumstances he may discount the opinion, and may even reject it, so long as he applies the correct legal standard to evaluate the opinion and provides "specific, legitimate reasons" for rejecting the opinion.  <u>Watkins</u>, 350 F.3d at 1301 (citing <u>Miller v. Chater</u>, 99 F.3d 972, 976 (10th Cir. 1996) (quoting <u>Frey v. Bowen</u>, 816 F.2d 508, 513 (10th Cir. 1987)).

The point of Plaintiff's argument that the ALJ did not "identify the evidence that <u>directly conflicts</u> with Dr. Stone's opinion regarding Geisler's need to alternate position," is not clear to the court.  (Pl. Br. 17) (emphasis added).  If Plaintiff is suggesting that the ALJ did not point to evidence in support of his finding, Plaintiff is ignoring the evidence cited by the ALJ and discussed by the court above.  (R. 26) (citing Exs. 1F, 2F, 4F, 11F (R. 290, 298-300, 316, 426)).  If Plaintiff is suggesting that in order to discount a particular aspect of a treating source opinion an ALJ must cite record evidence which is <u>directly contrary</u> to that aspect of the opinion or which establishes that that aspect of the opinion <u>cannot</u> be accepted, Plaintiff is mistaken.  Plaintiff cites to no authority for such a proposition.  In fact, the weight of authority is to the contrary.  It has long been the case that an administrative agency's decision can be supported by substantial evidence even if

13

the evidence will also support another conclusion inconsistent with the agency's finding. N.L.R.B. v. Nev. Consol. Copper Corp., 316 U.S. 105, 106 (1942) ("The possibility of drawing either of two inconsistent inferences from the evidence did not prevent the Board from drawing one of them"); Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966) ("the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."); Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."); Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (same).  While an ALJ may not rely upon his own lay opinion to discount a treating source medical opinion, he may discount the opinion if he provides specific, legitimate reasons supported by the record evidence.

However, Plaintiff also points to the medical expert's (Dr. Francis's) testimony at the hearing and argues that Dr. Francis found no reason to discount Dr. Stone's opinion, did not identify evidence which conflicted with the opinion, and did not state that Dr. Stone's opinion was not based upon appropriate evidence.  Plaintiff's argument implies that the ALJ erred in failing to recognize that Dr. Francis's hearing testimony supported Dr. Stone's opinion, and in failing to discuss this evidence which the ALJ implicitly rejected.  The Commissioner's brief does not address Plaintiff's argument in this regard.

As Plaintiff's argument suggests, Plaintiff's counsel asked follow-up questions after the ALJ questioned Dr. Francis at the hearing.  (R. 523-31).  Counsel confirmed that

14

Dr. Francis had reviewed the entire medical record, and he led the medical expert to

correct the expert's mistaken impression that Dr. Stone's letter opinion was that of a non-

treating physician.  (R. 523-25).  He then inquired concerning the expert's view regarding

the significance of certain items of evidence (R. 526-28), and Dr. Francis explained that it

was difficult to say based upon the record evidence whether Plaintiff's condition meets or

equals a listed impairment, "[b]ut suffice it to say I do believe he has been significantly

impaired on the basis of all these issues that are going on."  (R. 529).  In a final question,

counsel sought a response to Dr. Stone's alternation limitation:

> Q  And one final question, I believe is all I have.  Again, in Dr. Stone's
> assessment he talks about the 15 pound lifting, and felt that the
> patient shouldn't be on his feet more than two hours out of an
> eight-hour day.  And incidentally that was before this neuropathy
> came to light.  But here's the part I wanted to ask you your opinion
> on.  He says he should also avoid prolonged or captive positioning,
> and he'll need to alternate between sitting, standing, and moving
> about as needed as often as every 10 to 15 minutes.  Does that sound
> like a reasonable limitation to you given this man's history and
> findings?
>
> A  I wouldn't have any reason to argue with that if that happened to be
> the opinion of the longstanding treating physician as of that date.

(R. 529-30).  The ALJ did not inquire further.  In this exchange, as far as it goes, Dr.

Francis implicitly acknowledged that Dr. Stone's restriction to alternation as often as

every ten to fifteen minutes was reasonable, and specifically stated that he would not

argue with it if it were the opinion of a longstanding treating physician.[1]

_____

[1]The court recognizes that there may be an evidentiary basis or bases for the ALJ
to determine that Dr. Francis did not specifically find the alternation restrictions

15

The ALJ discounted Dr. Stone's opinion, but he did not discuss this portion of Dr. Francis's testimony and did not recognize that, at least potentially, the testimony supports Dr. Stone's opinion.  Moreover, the ALJ accorded "some, but not substantial weight" to Dr. Francis's opinion, and discounted that opinion because he found restrictions are warranted in addition to those suggested by Dr. Francis "particularly in reference to the claimant's respiratory impairment."  (R. 27).  This comment explains why the ALJ found Plaintiff limited to "moderate exposure to pulmonary irritants" (R. 23), but it says nothing regarding the potential support Dr. Francis's testimony provides to Dr. Stone's opinion.

The Tenth Circuit has explained the circumstances under which an ALJ must discuss particular items of evidence in his decision.  The record must demonstrate that the ALJ considered all of the evidence, and he must discuss the evidence supporting his decision, the uncontroverted evidence he chooses not to rely upon, and significantly probative evidence he rejects.  Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).

In the circumstances of this case, Dr. Francis's testimony that he would not argue with Dr. Stone's opinion, and his acknowledgment that Dr. Stone's alternation restriction was reasonable is significantly probative evidence, because the question whether Plaintiff

---

reasonable and/or did not specifically support applying those restrictions.  However, that determination belongs to the Commissioner in the first instance.  The ALJ did not discuss the testimony or make any findings with regard to it, and the court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision.  Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005).

must alternate position as often as every ten or fifteen minutes or only at some greater interval is central to the question of disability, at least for the period before September 1, 2009.  The vocational expert testified that all work would be precluded for an individual who had to alternate sitting every ten to fifteen minutes and standing every five to ten minutes.  (R. 566).  He testified that work would be available to someone with the RFC assessed by the ALJ--an individual who had to alternate positions every forty-five to sixty minutes.  (R. 566-67).  He also testified that if an individual had the need to alternate positions every thirty to sixty minutes, work would be available, but that if an individual had to alternate positions more frequently than thirty minutes, no work would be available.  (R. 567).

The court concludes that Dr. Francis's testimony is significantly probative evidence supporting Dr. Stone's opinion.  Since the ALJ discounted Dr. Stone's opinion, he implicitly rejected Dr. Francis's testimony, and was, therefore, required to discuss the testimony.  He did not do so, and this is reversible error.  Remand is necessary for the Commissioner to properly evaluate the medical opinions.

As the court already noted, determining the onset date of disability requires a prior determination that Plaintiff does not have the RFC to perform work in the economy; Soc. Sec. Ruling (SSR) 83-20; and a proper RFC assessment necessarily rests upon a proper evaluation of the medical opinions.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); SSR 96-8p.  Since the court has found that remand is necessary to properly evaluate the medical

opinions, it would be premature at this time to attempt to evaluate the ALJ's RFC assessment and his determination of the onset date of Plaintiff's disability.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings.

Dated this 5th day of October 2011, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

18